UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BLUNT WRAP USA, INC. | CIVIL ACTION |
| VERSUS | NO. 15-2764 |
| GRABBA-LEAF, L.L.C. | SECTION "N" (5) |

### ORDER AND REASONS

Presently before the Court is Defendant "Grabba-Leaf, LLC,'s 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction" (Rec. Doc. 28). Having carefully reviewed the parties' submissions, the record herein, and applicable law, **IT IS ORDERED** that the motion to dismiss is **GRANTED** for the reasons stated herein. Accordingly, **IT IS FURTHER ORDERED** that Plaintiff's claims against Defendant be and hereby are **DISMISSED WITHOUT PREJUDICE**.

### BACKGROUND

In this action, Plaintiff alleges Defendant has infringed patents that Plaintiff holds relative to "cigar tubes for holding an end user's tobacco fill material," and thus seeks an award of damages and injunctive relief.[1] With the instant motion, Defendant, a non-resident Florida corporation with its principal place of business in Fort Lauderdale, Florida, contends that Plaintiff's claims should be dismissed for lack of personal jurisdiction. Because this case involves patent law, precedent from the Supreme Court and the Federal Circuit controls the analysis of personal jurisdiction. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009)

---

[1] See Complaint, Rec. Doc. 1, ¶¶ 6-10.

1

(Federal Circuit law applies because "the jurisdictional issue is 'intimately involved with the substance of the patent laws'") (quoting *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008)); *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003).

A court has personal jurisdiction over a nonresident defendant when (1) the forum state's long-arm statute confers personal jurisdiction over that defendant, and (2) the forum state's exercise of jurisdiction comports with due process requirements. *Genetic Implant Sys., Inc. v. Core–Vent Corp.*, 123 F.3d 1455, 1457 (Fed. Cir. 1997)). Louisiana's long-arm statute, Louisiana Revised Statute 13:3201*, et seq.*, extends jurisdiction to the full limits of due process. *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999) (citing LSA - R.S. 13:3201(B)). Accordingly, the Court's focus is solely on whether the exercise of its jurisdiction in this case satisfies federal due process requirements.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 319 (1945)). By requiring a "fair warning that a particular activity may subject" a defendant to "the jurisdiction of a foreign sovereign, the Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* at 472 (internal citations omitted). Personal jurisdiction over a non-resident defendant satisfies due process requirements when the defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co.,* 326 U.S. at 316 (quoting *Milliken v.*

*Meyer*, 311 U.S. 457, 463 (1940)).

Personal jurisdiction may be either specific or general. General or "all purpose" jurisdiction permits a court to assert jurisdiction over a non-resident defendant even when the cause of action at issue is unrelated to the defendant's connection with the forum state. *Walden v. Fiore*, 134 S. Ct. 1115, 1121 n. 6 (2014) (quoting *Goodyear Dunlop Tires Operations*, *S.A. v. Brown*, 564 U.S. 915, 919 (2011)). It exists only when a defendant has affiliations with the forum state that are so "'continuous and systematic'" that it, notwithstanding its non-resident status, is essentially "at home" in that state's courts. *Goodyear Dunlop Tires*, 564 U.S. at 919. Here, it is undisputed that Defendant's *only* contact with Louisiana resulted from its single sale and shipment of tobacco products to NTBM, Inc., whose owner and representative, Mr. Sameer Mohamed, ordered the products by telephone for retail sale in its Thibodaux, Louisiana convenience store.[2] Given that, general personal jurisdiction unquestionably is absent.

Specific jurisdiction, unlike general jurisdiction, is limited to claims that arise out of or relate to the non-resident defendant's contacts with the forum state. *See, e.g., Burger King,* 471 U.S. at 472-73; *AFTG-TG, LLC v. Novoton Technology Corp.*, 689 F.3d 1358, 1360 (Fed. Cir. 2012); *see also Walden,* 134 S. Ct. at 1121 ("[t]he inquiry whether a forum State may assert specific jurisdiction over a non-resident defendant focuses on the relationship among the defendant, the forum, and the litigation") (internal quotations omitted). Specific jurisdiction, however, requires fewer contacts with the forum state than general jurisdiction and, under certain circumstances, may even rest on a defendant's single contact with the forum state. *Burger King,* 471 U.S. at 475 n. 18.

For a single action to be sufficient to provide specific jurisdiction, however, it must

---

[2] See Rec. Doc. 28-2.

"create[] a 'substantial connection' with the forum." *Id.* (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957); *see also Walden,* 134 S. Ct. at 1121 (due process requires that a defendant's suit-related conduct create a "substantial connection with the forum State"). Contacts that are "'random, fortuitous, or attenuated," or the result "of the unilateral activity of another party or third person,'" will not suffice. *Burger King,* 471 U.S. at 475. "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden,* 134 S. Ct. at 1122-23. That is, "the relationship must arise out of contacts that the 'defendant *himself* creates with the forum State.'" *Id.* at 1122 (emphasis in original) (quoting *Burger King Corp.,* 471 U.S. at 475).

Furthermore, the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 1122. "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 1123 (quoting *Burger King,* 471 U.S. at 475) (internal quotation marks omitted). Accordingly, the plaintiff "cannot be the only link between the defendant and the forum." *Id.* at 1122. Rather, specific jurisdiction exists only where the *non-resident defendant* has purposely directed activity toward the forum state, or otherwise availed itself of the privilege of conducting activities therein, thus invoking the benefits and protections of the forum state's laws such that the defendant should reasonably anticipate being haled into its courts. *See, e.g., Goodyear Dunlop Tires*, 564 U.S. at 924 (quoting *Hanson v. Denckla*, 357 U.S. 235, 353 (1958)).

Accordingly, determining whether specific jurisdiction exists "entails a three-part test:

4

(1) whether the defendant purposefully directs activities at the forum's residents; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *AFTG-TG, LLC*, 689 F.3d at 1361. "The first two factors correspond with the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Inamed Corp. v. Kuzmak,* 249 F.3d 1356, 1360 (Fed. Cir. 2001). Plaintiff, as the party invoking the Court's authority, bears the initial burden of establishing "minimum contacts." *Id.* at 1360. Where an evidentiary hearing is not held, however, a plaintiff need only to make a prima facie showing. *See, e.g., Elecs. For Imaging, Inc.,* 340 F.3d at 1348. Further, uncontroverted allegations in Plaintiff's complaint are accepted as true and any factual conflicts are resolved in Plaintiff's favor. *Id.* If Plaintiff's burden is met, the non-resident defendant bears the burden as to the "fair play and substantial justice" factor. *Inamed Corp.,* 249 F.3d at 1360.[3]

---

[3] "To determine whether exercising personal jurisdiction would comport with "fair play and substantial justice," five factors are considered: "(1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive social policies." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1299 (Fed. Cir. 2009) (citing *Burger King,* 471 U.S. at 477). These factors may serve to "establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than otherwise would be required," but they may also establish a "compelling case" that would "render jurisdiction unreasonable" despite the presence of minimum contacts. *Id.* "The Supreme Court [has] made clear that the third factor is to be applied sparingly." *Campbell Pet Co. v. Miale*, 542 F.3d 879, 885 (Fed. Cir. 2008) (quoting *Burger King*, 471 U.S. at 477). " When a defendant seeks to rely on the 'fair play and substantial justice' factor to avoid the exercise of jurisdiction by a court that otherwise would have personal jurisdiction over the defendant,'he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* "[C]ases where a defendant may defeat otherwise constitutional personal jurisdiction should be 'limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.'" *Inamed Corp.,* 249 F.3d at 1363 (Fed. Cir. 2001) (quoting *Akro Corp. v. Luker*, 45 F.3d at 1549 (Fed. Cir.1995) (quoting *Beverly Hills Fan Co. v. Royal Sovereign Corp*, 21 F.3d 1558,1568 (Fed. Cir. 1994)).

In a contractual context, merely entering into a contract with a resident of the forum state does not necessarily establish minimum contacts sufficient to provide jurisdiction. *See Burger King,* 471 U.S. at 478-79 (individual's contract with an out-of-state party does not *alone* automatically establish minimum contacts in the other party's home forum); *see also Walden,* 134 S. Ct. at 1122-23 (quoting *Burger King)*; *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) ("'merely contracting with a resident of the forum state does not establish minimum contacts'") (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom,* 481 F.3d 309, 311 (5th Cir. 2007)). Instead, it is the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" that are "evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Burger King,* 471 U.S. at 478-79. Thus, with respect to interstate contractual obligations, the Supreme Court has "upheld the assertion of jurisdiction over defendants who have purposefully 'reach[ed] out beyond' their State and into another by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State." *Walden,* 134 S. Ct. at 1122 (quoting *Burger King,* 471 U.S. at 474-76 ); *Beverly Hills Fan Co.,* 21 F.3d at 1568 (defendants' ongoing and continuous shipments of the accused infringing products through established distribution network formed by defendant and Builder's Square provided necessary contacts with forum state); *cf. ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 499-500 (5th Cir. 2012) (defendants' purposeful selection of Gulfport as site for transfer of 55 shipments of goods "was sufficient for them to have reasonably anticipated being haled into court in Mississippi").

Here, Plaintiff's patent infringement claim is premised on the aforementioned

6

transaction between Defendant and NTMB, Inc., a Louisiana entity; therefore, it bears the necessary factual nexus for specific jurisdiction. Grabba-Leaf, however, has facilities in only South Florida, has never had an office or other facility in Louisiana, and has never maintained sales personnel in Louisiana.[4] It does not market its products directly to consumers in Louisiana, and has never had representatives attend trade shows, marketing conferences, or sales meetings in Louisiana.[5] Nor, to the Court's knowledge, does Defendant maintain a website through which the tobacco products in question can be purchased. Indeed, the one-time transaction between Defendant and NTMB apparently is the only sale of products that Defendant has made to a Louisiana resident or company.[6]

Significantly, Plaintiff has not shown, or even alleged, that Defendant solicited that transaction. To the contrary, an unsolicited telephone call from NTBM's owner, Mr. Mohamed, acting upon the recommendation of a friend living in Florida, initiated the transaction.[7] Furthermore, despite having been given an opportunity for jurisdictional discovery,[8] Plaintiff has made no showing that the telephone communication between Mr. Mohamed and Defendant's representative included any commitment by Mr. Mohamed to purchase additional products in the future, any discussion of Mr. Mohamed possibly serving as a distributor of Defendant's products to other retailers, or any other affirmative effort by Defendant seeking to promote and develop a market for its products in

---

[4] See Rec. Doc. 28-2, Affidavit of Michael A. Robinson (Defendant's founder and CEO) at ¶¶ 4-5.

[5] *Id.* at ¶¶ 6, 7, 11, and 12.

[6] *Id.* at ¶¶ 8 and 13.

[7] See Rec. Doc. 40-1, p. 2 of 6, 34-1, pp. 5-7, 10-11, 15,18, and 20 of 22; Rec. Doc. 40-1, p. 2 of 6; Rec. Doc. 28-2 at ¶9.

[8] To facilitate the Court's jurisdictional inquiry, the parties requested, and were allowed, an opportunity to conduct jurisdictional discovery. *See* Rec. Docs. 12-14, 24 and 27.

Louisiana.

Finally, Plaintiff emphasizes the quantity of the items that Mr. Mohamed purchased from Defendant, *i.e.* consisting of 36 boxes of cigar wrappers with a total value of $702.00. Nevertheless, Plaintiff fails to explain how or why that fact alone provides the necessary purposeful activity by *Defendant* directed to Louisiana, or establishes that Defendant has availed itself of the privilege of conducting activities in Louisiana such that it should reasonably expect to be haled into its courts. Absent such information, demonstrating the necessary substantial connection with the state, the Court is left to conclude that the transaction between Defendant and NTBM was nothing more than a random and isolated contact insufficient to provide specific personal jurisdiction in this matter.[9] *See, e.g., J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 888 (2011) (Breyer, J. concurring in judgment) ("None of our precedents finds that a single isolated sale, even if accompanied by the kind of sales effort indicated here, is sufficient."); *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 117 (1987) (Brennan, J. concurring in part

---

[9] Pointing to Plaintiff's counsel's possession of the invoice and shipping documents from NTBM's purchase from Defendant, as well as deposition testimony by Mr. Mohamed, Defendant additionally suggests that Plaintiff orchestrated and bears responsibility for the transaction, and resulting shipment of tobacco products to Louisiana, where Plaintiff maintains its principal place of business. If Defendant is correct, such facts would likewise support dismissal of Plaintiff's claims, given that personal jurisdiction over a non-resident requires purposeful conduct by the defendant, directed at the forum state, not a connection created by a plaintiff's unilateral and camouflaged conduct. *See, e.g., Monistere v. Losauro,* Civ. Action No., 13-22, 2013 WL 6383886, *7 (E.D. La. Dec. 4, 2013) (Barbier, J.) (no personal jurisdiction where single sale by the defendants to the plaintiff resulted from the plaintiff's unilateral activity rather than purposeful conduct by the defendants); *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 661 (E.D. Tex. June 18, 2007) (two purchases made at initiative of the plaintiff's investigator constituted (insufficient) unilateral activity by the plaintiff); *see also, e.g., Buccellati Holding Italia SPA v. Laura Buccellati, LLC,* 935 F. Supp. 2d 615, 623 (S.D.N.Y. 2013) (court in a trademark case collecting cases and noting that courts in other circuits "have expressed 'hostility towards finding jurisdiction under such potentially manufactured circumstances'").

and concurring in judgment) ("The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale."); *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297-98 (1980) (not unreasonable to subject non-resident manufacturer or distributor to suit where sale of a product in forum state "is not simply an isolated occurrence," but instead "arises from [] efforts to serve directly, or indirectly, the market for its product in other states").

New Orleans, Louisiana, this 1st day of September 2016.

                                      **KURT D. ENGELHARDT**
                                      **United States District Judge**